Schroeder et ux. *v.* Gulf Refining Co., Appellant (No. 1).

Argued April 15, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*David I. Scanlon,* with him *Ira A. LaBar* and *Alfred T. Steinmetz,* for appellant.—The true test of liability is not whether the act committed was one for the benefit of the employer, but whether it was one within the scope of the employment: Murphey v. Transit Co., 30 Pa. Superior Ct. 87; Christian v. Transit Co., 244 Pa. 391; Drexler v. Transit Co., 244 Pa. 18; Lowry v. Sewing Machine Co., C2 Pa. Superior Ct. 364; Perrin v. Lumber Co., 276 Pa. 8.

The estate of a husband and wife, as tenants by entireties is per my et per tout, and, while it is law that one of two tenants by entireties may not mortgage the property without the other joining in the instrument, the nature of the tenancy is such that each owns all of the property, and has all of the rights of enjoinment of ownership therein; an agreement, therefore, signed by one relating to the installation of equipment on the property, and as affecting the property, should be given binding effect on both parties, and, by analogy, is similar to many an act which may be done by one or two such tenants, and binding on the other, as has been held to be the law.

*Forrest J. Mervine,* with him *Russell L. Mervine,* for appellee.—Defendant's driver was acting within the scope of his employment, and the defendant is responsible for his negligent acts: Moon v. Matthews, 227 Pa. 488; Petrowski v. R. R., 263 Pa. 531; Hazzard v. Carstairs, 244 Pa. 122; Brennan v. Merchant & Co., 205 Pa. 258; McCaffrey v. Lukens, 67 Pa. Superior Ct. 231; Blaker v. Electric Co., 60 Pa. Superior Ct. 56.

The trial judge submitted to the jury, for their determination, as a question of fact, whether at the time of the accident, defendant's driver was acting within the scope of his employment, and was on his master's busi-

ness, and the jury found in favor of plaintiff, and their finding thereon is conclusive: Marcus v. Gimbel Bros., 231 Pa. 200; Brennan v. Merchant & Co., 205 Pa. 258; Moon v. Matthews, 227 Pa. 488; Blaker v. Electric Co., 60 Pa. Superior Ct. 56; McCaffrey v. Lukens, 67 Pa. Superior Ct. 231.

OPINION BY MR. JUSTICE SADLER, May 12, 1930:

Charles H. Schroeder and wife were tenants by entireties of a property in the Borough of Stroudsburg. The front of the lower floor was devoted to the automobile accessory business, in connection with which there was sold gasoline of the Gulf Refining Co., defendant. Two tanks were installed by the owners beneath the sidewalk, extending into the cellar of the building, one used as a container for straight, and the other, high-test, fuel. Two pumps were placed at the curb line by the oil company, and each connected with the tanks by two pipes, one for filling purposes, and the other intended for drawing out the contents. From time to time the delivery truck of defendant came to the premises to supply the needed gas. Hughes, the driver, had performed this service on previous occasions, receiving, in each instance, a receipt for the number of gallons furnished, and the cost thereof was later charged to the purchaser on the company's books.

On May 24, 1926, about three in the afternoon, he stopped at the filling station, but was told by the daughter of the proprietor that no gas was needed, the father having so advised her by a note left in the office, when he had left for the day. Notwithstanding, the employee undertook to examine the tanks and determine if there was a sufficient supply on hand. He went to the cellar, unscrewed the cap of the high-test tank, and concluded that an additional amount was required. Connection was then made with the wagon, and oil turned into the intake pipe, Hughes returning to the store while this transfer of fuel was taking place. More gallons

than proper were permitted to enter, with the result that the contents overflowed and ran upon the street. At a point, variously estimated at from 8 to 30 feet distant, the employees of a telephone company had been engaged in repair work since one o'clock, using in their operation a lighted blow torch. The gasoline, or the fumes therefrom, reached it, and an explosion followed, causing plaintiffs' house to be set on fire and destroyed, with the contents. This action was brought to recover for the loss to the realty, and resulted in a judgment for the owners.

It was urged on the trial that the loss occurred by reason of a burning fire in the cellar furnace, which came in contact with the fumes collected there, or was due to the escaping of such from an open vent in the wall located near the intake pipe, and not from an overflow of gas from the truck. The question of negligence, or possible contributory negligence, was submitted to the jury, which found for plaintiffs, and the defendant, appellant, in its present argument, does not question the correctness of the finding reached as to this. Liability was denied on the ground that the company was not legally chargeable with the lack of care of the truck driver, and it also defended on the ground that it was released from responsibility for such damage as occurred.

The claim is made that Hughes was not acting by authority of defendant when he made delivery of the gasoline, since not requested by the owner of the property to fill the tank, and his negligent acts were beyond the scope of his employment. He was in charge of defendant's regular delivery truck, and had been for a year before. In the course of his duties, he supplied the regular customers from time to time, likewise serving all others who were willing to pay cash. The affidavit of defense filed in the present case set forth that Schroeder had ordered the gasoline on the present occasion, but this position was abandoned on the trial. The

seventh paragraph of plaintiffs' statement, admitted in the pleadings, and offered in evidence, reads: "On the said 24th of May, 1926, at about 3 o'clock p. m., the defendant, by its servant, agent, workman and employee, Charles Hughes, who at that time was acting in the scope of his employment and on behalf of his employer's business, stopped a gasoline automobile truck of defendant in front of the premises of plaintiffs." It is urged that this statement as to service applied only to the driving of the truck and not to the acts performed in making delivery, and, further, is merely a declaration of a conclusion as to the status of the employee. Even if so, there was ample evidence which justified the jury in finding Hughes was executing duties imposed on him by the defendant in furtherance of its interest, and the extent of his authority was a matter for its determination: Dregier v. Kramer, 292 Pa. 9; McDermott v. Cons. Ice Co., 44 Pa. Superior Ct. 445.

"Acts may be said to be within the scope of the servant's employment where specifically directed, or where they are clearly incidental to the master's business. It is not essential that the act be specially authorized by the master. An act is within the scope of the servant's employment, where necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master": 39 C. J. 1283. The burden is on the plaintiff to show the one causing the injury was a servant (Rucinski v. Cohn, 297 Pa. 105), and the use of property for another, producing the harm complained of, such as an automobile, does not prove in itself authority to perform the act causing damage: Lotz v. Hanlon, 217 Pa. 339; Scheel v. Shaw, 252 Pa. 451; Martin v. Lipschitz, 299 Pa. 211; Zavodnick v. Rose, 297 Pa. 86. If, however, the injury occurs while the actor is employed in the usual course, and for the benefit of the owner, there is a presumption that the servant is acting within the scope of his authority: Moon v. Mat-

thews, 227 Pa. 488; Petrowski v. P. & R. Ry. Co., 263
Pa. 531; Blaker v. Phila. El. Co., 60 Pa. Superior Ct.
56. Where the facts disclose the servant to be so en-
gaged, in furtherance of the master's business, the lat-
ter is liable though the former is disobeying orders given
(Dunne v. P. R. R. Co., 249 Pa. 76; Luckett v. Reighard,
248 Pa. 24; McClung v. Dearborne, 134 Pa. 396; Mar-
cus v. Gimbel Bros., 231 Pa. 200; Brennan v. Merchant
& Co., 205 Pa. 258; McCaffrey v. Lukens, 67 Pa. Supe-
rior Ct. 231), though not responsible where the injury
results from misconduct beyond the line of service, as
by the commission of wilful and intentional trespass:
McFarlan v. P. R. R. Co., 199 Pa. 408; Christian v.
P. R. T., 244 Pa. 391; Perrin v. Glassport Lumber Co.,
276 Pa. 8; Lowry v. Singer Sewing Mach. Co., 62 Pa.
Superior Ct. 364.

In the instant case, Hughes had been placed in charge
of the sales truck of defendant. His duty was to dis-
pose of the company's product to regular customers for
credit, or to any others ready to pay cash. In filling
the tanks of Schroeder, he was carrying on the work
intrusted to his care, and, it will be noted, took a re-
ceipt for the gas delivered when the accident occurred,
and plaintiffs were charged with the value thereof on
the defendant's books. To show his act was personal
and not in the course of business, two agents of the oil
company were called to testify that drivers had no au-
thority to deliver gasoline against the order of the cus-
tomer, but only when requested. Neither stated the em-
ployees were so limited by instructions, or that the com-
pany had any rules or regulations to this effect. Both
did say that gas could be furnished to any legitimate
dealer, whether or not a previous order had been given,
or he could sell for cash. Hughes was sent out in fur-
therance of his employer's business to make sales and
see that his customers were kept supplied. Though told,
in the present instance, that none was needed by
Schroeder at the moment, he filled the partly emptied

tank, and the company charged the one to whom delivery was made with the cost. It was for the jury to say if the truck driver was acting in the course of his employment when he furnished the gasoline, and it justifiably concluded in the affirmative.

The second defense relied on rests on the agreement of Schroeder that no damages for loss occasioned by the use of pumps should be demanded, even though negligence of the employees of the oil company appeared. Assuming the contract referred to was in force and covered acts such as complained of here,—a question to be discussed in a companion case, argued with the present appeal, and in which an opinion has this day been filed, —it could not relieve the defendant from responsibility in this action brought by the husband and wife as tenants by entireties. Such an estate has long been recognized in Pennsylvania, and "neither husband nor wife, in whom property has jointly vested, can sell or assign their individual rights therein without the joining of the other. ...... Any alienation by one, the other not consenting, of any interest whatever in the estate, if allowed, would be an abridgment pro tanto of the rights of the other": Gasner v. Pierce, 286 Pa. 529, 532; O'Malley v. O'Malley, 272 Pa. 528. The title and rights of the wife in an estate held by herself and husband are not liable to be conveyed, encumbered, or otherwise prejudiced or disposed of by her husband to any greater extent than though such an estate were vested in her exclusively in her own right: 13 R. C. L. 1125; 30 C. J. 568, 569; Wightman v. Cottrell, 139 N. Y. S. 564. The real estate destroyed by fire was owned by both, with a right of survivorship. Neither could agree to its destruction, without compensation for replacement, without the assent of the other, and any attempted release by the husband of compensation for loss occasioned by negligence was ineffective, for the joint estate could not thus be destroyed without the agreement of both. A re-

lease of the right to damages for the destruction of the building lost by fire would have this effect, and the wife cannot thus be deprived of her interest in the estate.

The judgment is affirmed.